Thomas E. Young, Body, Vickers & Daniels, Cleveland, Ohio, argued for appellant. With him on the brief was Robert V. Vickers.

Albin F. Drost, Associate Sol., Office of the Sol., of Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before NEWMAN and MAYER, Circuit Judges, and DUMBAULD, Senior District Judge.*

### In re BONGRAIN INTERNATIONAL (AMERICAN) CORP.

No. 89–1536.

United States Court of Appeals, Federal Circuit.

Jan. 23, 1990.

DUMBAULD, Senior District Judge.

Appellant, Bongrain International (American) Corporation, appeals [1] from the Trademark Trial and Appeal Board's refusal to register the words BABY BRIE on the Principal Register, pursuant to Section 2(f) of the Lanham Act of July 5, 1946, 60 Stat. 427, 428–29, 15 U.S.C. § 1052(f), for soft ripened cheese,[2] on the ground that the words are merely descriptive and hence registration is precluded by Section 2(e)(1)

---

\* The Honorable Edward Dumbauld, Senior District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation pursuant to 28 U.S.C. § 293(a).

1. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).

2. The original application, Serial No. 76/576,009, was filed on January 1, 1986, claiming use since September 7, 1983, and describing the product as Brie cheese.

of the Act, 15 U.S.C. § 1052(e)(1).[3] The Board also held that applicant's evidence of acquired distinctiveness was insufficient to support registrability.[4] The issue whether the term sought to be registered was "deceptively misdescriptive" was withdrawn during the proceedings. We affirm.

The evidence of record clearly indicates that "BABY BRIE" is merely descriptive of the product and hence is not registrable.[5] Addition of the modifier "baby" signifies simply small size. There is ample evidence that in the food industry "baby" is often used to indicate size. The Board points out that a 1977 price list shows that the term "baby" was used in the retail cheese business "as a size indicator with respect to a number of different cheeses" long before Bongrain began using it in 1983. The Board lists also seven instances of use of the term with respect to different varieties of cheese. It is likewise used in the food industry generally as a size indicator with respect to vegetables and other products. (App. 3–4).

The public's understanding of this usage can not be eradicated by the mere fact that appellant sells its Brie cheese in packages somewhat larger than those of some other sellers.[6]

Even if Bongrain's packages are slightly larger than those of some competitors, they may still properly be regarded by purchasers as "baby" size, since they are less than half the size described in *Larousse Gastronomique* as small.[7] It would be intolerable sophistry if a seller such as Bongrain could escape the unregistrability of a merely descriptive mark by simply increasing the size of its package.[8]

3. Section 1052 provides, in pertinent part:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, except as indications of regional origin may be registrable under section 1054 of this title, or (3) is primarily merely a surname.

(f) ... [N]othing ... shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.

4. If a mark is generic, incapable of serving as a means "by which the goods of the applicant may be distinguished from the goods of others" but merely identifies a category of goods (including those of others as well as the applicant's) it is not a trademark and can not be registered under the Lanham Act. *In re Gould Paper Co.*, 834 F.2d 1017, 1018 (Fed.Cir.1987). If the mark is "merely descriptive" it may nevertheless acquire distinctiveness or secondary meaning and be registrable under Section 1052(f), although as the Court noted in *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1581 (Fed.Cir.1988) "the greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning." To acquire secondary meaning Section 1052(f) requires that the mark must have become "distinctive *of the applicant's* goods." [Italics supplied] See also Judge Rich's opinion in *Remington Products,*

*Inc. v. North American Philips Corp.*, 892 F.2d 1576 (Fed.Cir.1990), citing a leading case on descriptiveness written by him more than a quarter century ago, *DeWalt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656 (CCPA 1961).

5. An excerpt in the record from *Larousse Gastronomique* by Prosper Montagne, 236 (1961) shows that Brie cheese was used by Charles dÓrleans in the fifteenth century and praised by the poet St. Amant two centuries later:

Beny soit le territoire de Brie.

\* \* \* \* \* \*

Cést luy seulement qui merite
Quén or sa gloire soit escrite.
[Blessed be the land of Brie. She only deserves that her glory be written in gold]. App. 59.

6. The reference to *Larousse Gastronomique* in note 5, *supra,* shows that Brie is made in various sizes: a large Brie may be up to 22 inches (54 cm.) in diameter; a medium up to 16 inches (42 cm.); and a small one not more than 13 inches (33 cm.). Bongrain's largest container (17.6 oz.) is 5½ inches in diameter. (App. 40,-183). It also sells a 10.6 oz. package (App. 179); and formerly sold a 1.1 oz. size (App. 179). Many competitors sell in 4.5 oz. packages (App. 163).

7. See note 6, *supra.*

8. Such conduct would merely amount to using a "deceptively misdescriptive" mark, which is also unregistrable; although, as the Examining Attorney remarked, a purchaser is not actually deceived, since the actual size of the package is observable at the time of purchase (App. 186).

The Board likewise ruled correctly that appellant's evidence as to acquired distinctiveness or secondary meaning was insufficient to permit registration under Section 1052(f). Growth in sales was the principal factor upon which appellant relied to show distinctiveness. But, as the Board observed (App. 9), this may indicate the popularity of the product itself rather than recognition of the mark "BABY BRIE" as indicative of origin; or it may indicate acceptance of Bongrain's other mark "Alouette", which was used along with "BABY BRIE" on the packages (App. 23). The possible existence of secondary meaning is a question of fact, and it is not possible for us to find the Board's determination to be clearly erroneous. *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1581 (Fed.Cir.1988).[9]

Accordingly, the decision of the Board is AFFIRMED.

---

**9.** Pertinent to the case at bar is the Court's comment in *Yamaha* that "the greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning." 840 F.2d at 1581. See note 4, *supra.*