THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: May 31, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Crystal Geyser Water Company
_____

Serial No. 76201270
_____

Lawrence G. Townsend, Owen, Wickersham & Erickson, P.C. for Crystal Geyser Water Company.

Elizabeth A. Hughitt, Trademark Examining Attorney, Law Office 111 (Craig D. Taylor, Managing Attorney).
_____

Before Holtzman, Kuhlke and Wellington, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Crystal Geyser Water Company has filed an application to register the mark **CRYSTAL GEYSER ALPINE SPRING WATER** on the Principal Register for "bottled spring water" in International Class 32.[1]

The examining attorney required that applicant disclaim the wording ALPINE SPRING WATER on the ground that

_____
[1] Application Serial No. 76201270, filed January 29, 2001, under Section 1(a) of the Trademark Act, 15 U.S.C. §1051(a), alleging May, 1998 as the date of first use and first use in commerce.

it is merely descriptive of applicant's goods within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1).[2] When the examining attorney continued the requirement for a disclaimer based on descriptiveness and added misdescriptiveness as an alternative basis for the requirement, applicant responded by filing an amendment to seek registration under Section 2(f) of the Trademark Act in part as to ALPINE SPRING WATER based on substantially exclusive and continuous use in commerce for more than five years and supporting evidence of acquired distinctiveness. The examining attorney issued a non-final action determining that applicant had not shown acquired distinctiveness and maintained the refusal of registration in the absence of a disclaimer under Section 6(a). Applicant then submitted a disclaimer of the words SPRING WATER, but applicant did not agree to a disclaimer of the entire phrase ALPINE SPRING WATER. Consequently, pursuant to Section 6(a) of the Trademark Act, 15 U.S.C. §1056(a), the examining attorney made final the requirement for a disclaimer and refusal of registration in the absence of such disclaimer, stating that the declaration and evidence was insufficient to establish acquired distinctiveness in

---

[2] The examining attorney also refused registration under Section 2(d) based on likelihood of confusion with a prior registration.

view of the highly descriptive nature of the phrase. Applicant has appealed and both applicant and the examining attorney have filed briefs. We affirm the disclaimer requirement and the refusal to register in the absence of a disclaimer.

Inasmuch as applicant has amended its application to seek registration under Section 2(f) in part based on acquired distinctiveness, applicant has conceded that the phrase ALPINE SPRING WATER is descriptive, and the only issue before us is applicant's assertion of acquired distinctiveness. Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd., 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988); In re Cabot Corp., 15 USPQ2d 1224, 1229 (TTAB 1990). We note, in any event, that the examining attorney has submitted ample evidence to establish the mere descriptiveness of the phrase "alpine spring water" as shown below in the discussion relating to the highly descriptive nature of the phrase.

It is applicant's burden to prove acquired distinctiveness. Yamaha, supra, 6 USPQ2d at 1006; In re Hollywood Brands, Inc., 214 F.2d 139, 102 USPQ 294, 295 (CCPA 1954) ("[T]here is no doubt that Congress intended

---

The Section 2(d) refusal was subsequently withdrawn after applicant was granted its petition to cancel that registration.

that the burden of proof [under Section 2(f)] should rest upon the applicant"). "[L]ogically that standard becomes more difficult as the mark's descriptiveness increases." Yamaha, supra, 6 USPQ2d at 1008. A claim that applicant has been using the subject matter for a long period of substantially exclusive use may not be sufficient to demonstrate that the mark has acquired distinctiveness. See In re Gibson Guitar Corp., 61 USPQ2d 1948, 1952 (TTAB 2001) (66 years of use). The amount and character of evidence required to establish acquired distinctiveness depends on the facts of each case, Roux Laboratories, Inc. v. Clairol Inc., 427 F.2d 823, 166 USPQ 34 (CCPA 1970), and more evidence is required where a mark is so highly descriptive that purchasers seeing the matter in relation to the goods or services would be less likely to believe that it indicates source in any one party. See In re Bongrain International Corp., 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990). Evidence of acquired distinctiveness can include the length of use of the mark, advertising expenditures, sales, survey evidence, and affidavits asserting source-indicating recognition. However, a successful advertising campaign is not in itself necessarily enough to prove secondary meaning. In re Boston Beer Co. L.P., 198 F.3d 1370, 53 USPQ2d 1056 (Fed.

Cir. 1999) (claim based on annual sales under the mark of approximately eighty-five million dollars, and annual advertising expenditures in excess of ten million dollars, not sufficient to establish acquired distinctiveness in view of highly descriptive nature of mark).

It is the examining attorney's position that ALPINE SPRING WATER is highly descriptive and applicant's evidence is not sufficient to establish acquired distinctiveness. In support of her position, the examining attorney relies on the following dictionary definition from The American Heritage Dictionary of the English Language, for "alpine":

Alpine:  2.  Of or relating to high mountains.

The examining attorney points to the following excerpt from a website describing applicant's founding and noting one of their first water sources is an alpine spring:

> To succeed, they needed a source of water in a remote area not threatened by development.  They spent a year and a half "networking" to find the right water sources – an alpine spring 4,000 feet up in the Sierra Nevada Mountains and a mineral spring in Napa Valley – and figuring out financing, production and distribution.  They built a bottling plant near the spring "in the middle of nowhere" to ensure the purity of their product, Gordon says.  "We think that's important.  It's fundamental."  www.colby.edu.

In addition, she submitted printouts from various websites retrieved from the Internet and excerpted articles from the LEXIS/NEXIS database where the phrases "alpine

spring" and "alpine spring water" are used by third parties to describe a type of bottled water.  As shown below, some examples pertain to applicant's proposed mark.

> Does BIOTA really come from one of the highest springs in the world?  Yes.  Snowmelt water is filtered over one hundred years through 13,000-foot peaks, emerging from its source 9,010 feet above sea level.  We believe this spring, now in commercial use, is one of the highest and purest **alpine springs** in the world. www.biotaspringwater.com;

> Pure **alpine spring water**, bottled with your personalized label, is a perfect and unforgettable refreshment for weddings and other special events.  Our bottled water comes in three bottle sizes and dozens of label styles and colors.  www.finewaters.com;

> What kind of water is best to drink?  Bottled water is more popular than ever, and for good reason.  Tap water often tastes bad and, depending on where you live, it can contain unwanted contaminants.  If you choose bottled water, the choices can be overwhelming.  Some things you might see on the bottles include: spring water, distilled water, natural artesian water, mountain spring water, **alpine spring water**, and more.  Confused yet?  Adding to the confusion is the fact that many bottled water companies have been accused of putting misleading labels on their bottles.  If you're really serious about your water, do the research on each company and find out which brand is best for you. www.healthdiaries.com;

> Crystal Geyser has selected 20-person shop Nice Advertising to design a national television and print campaign for its bottled **alpine spring water**.  <u>ADWEEK</u> (November 4, 2002).

> The favorite, though, was Crystal Geyser, **alpine spring water** from the mountains in Tennessee.  It

was the one judged to be the overall favorite.
<u>Wilmington Star-News</u> (October 13, 2002);

Bottled water, a familiar site [sic] to
dehydrated Mile High City dwellers, can be
customized through H@Logos Inc., a Boulder firm.
H@Logos puts a client's logo on 12-ounce, half-
liter and 1-liter bottles of **alpine spring water**.
<u>The Denver Post</u> (April 28, 1999);

DKNY (Donna Karan) exports her **alpine spring
water** from her California bottler to her London
boutique and to Milan, Italy, and sells out ...
<u>Chattanooga Free Press</u> (March 8, 1998); and

Eagle-eyed consumers would have read that Dasani
was a product of the Coca Cola Company and
should, therefore, be water of the very highest
quality, yes? ...Did it bubble up from a pure and
pristine **alpine spring**?  Was it yet another
product from the Evian region?  No and no.  As it
turned out, Dasani was bottled tap water...  <u>Hull
Daily Mail</u> (January 6, 2005).

The examining attorney also submitted examples of

applicant's advertising and promotional materials in

support of her argument that they "consistently reinforce

the highly descriptive significance of the phrase at

issue."  Br. p. 10.  In the excerpts below, the examining

attorney discusses the examples she highlights:

The label for water from the applicant's Olancha
Peak bottling plant shows a diagram of snow-
covered mountains with 14,500-ft Mr. Whitney and
12,000-ft Olancha Peak labeled, and with the term
"SOURCE" indicated below these peaks in the
diagram.  The wording "BOTTLED AT THE SOURCE" is
prominently displayed across the top of the
label.;

The page from the applicant's website with the
heading "THE DIFFERENCE" states as follows:

7

"Bottled at the Source.  Our geologists discovered remote, protected locations with water of remarkable quality and purity...but that is only the first step.  Other companies may truck their water from multiple sources.  We, on the other hand, build our bottling plants right at the mountain source because it's the best way to bottle and protect CRYSTAL GEYSER alpine spring water's freshness, purity and taste.";

The applicant's website page with the heading "QUALITY" introduces the information on this page by stating that "Crystal Geyser alpine spring water means quality control" – with "Crystal Geyser" having initial capitals and "alpine spring water" shown in normal all-lowercase lettering (exactly as just typed above in quoting the statement), and with only the wording "quality control" being bolded and shown in larger lettering.  In addition, the page tells consumers:  "We bottle at the source:  water is drawn directly from the spring and bottled.";

The applicant's website with the heading "FREQUENTLY ASKED QUESTIONS" includes the following question:  "Q:  Does CRYSTAL GEYSER ALPINE SPRING WATER use a 1 Micron filter to filter alpine spring water?";

The applicant's two-page advertisement for its "big bottle six pack" shows, on the second page, the large-type, bolded heading "CRYSTAL GEYSER ALPINE SPRING WATER," followed underneath by the following explanation of the applicant's goods: "ALPINE SPRING WATER The purest, best tasting spring water comes from the highest mountains. Ours begins as pure rain and snow in the Sierra Nevada, then naturally filters through the mountain layers before emerging at the Crystal Geyser Roxane Spring.  OUR SPRING It is located below the 12,000 foot high Olancha Peak, which is in the protected Golden Trout National Wilderness area.  Nearby Mt. Whitney is the highest peak in the contiguous United States.  SOURCE BOTTLING At our protected 4,000 foot high alpine spring source, our water is drawn from deep underground to prevent any surface contamination...We bottle

8

Alpine Spring Water at our state of the art bottling plant at the spring's source.  We firmly believe that source bottling is the only way to bottle and protect Crystal Geyser Alpine Spring Water's clean, refreshing taste."; and

An online advertisement by a company selling the applicant's water includes the heading "Product: Alpine Spring Water," and describes the product as follows:  "This alpine spring water begins as the pure snow and rain that falls on 12,000 foot Olancha peak in the towering Sierras.  It's then naturally filtered through the mountain's layers. Years later it emerges at the protected 4,000 foot high alpine source.  Bottling at the source maintains the quality and freshness."

Br. pp. 10-13.

The examining attorney then placed applicant's advertising in the context of the industry where applicant's competitors routinely place their house mark in close proximity to the name of the goods, two examples are set forth below.







We are persuaded by the evidence of record that the phrase ALPINE SPRING WATER is highly descriptive of applicant's goods.

As proof of acquired distinctiveness, applicant submitted the declaration of Jordan Nelson, applicant's Brand Manager, attesting to, inter alia, substantially exclusive and continuous use of the mark in commerce in connection with the identified goods since January 1990; applicant's sale of more than 7,650,000,000 bottles of its spring water bearing the phrase "Alpine Spring Water"; applicant's display of "Alpine Spring Water" on its delivery trucks; applicant's use of this phrase in its extensive advertising, including free-standing inserts or coupon offers in newspapers; display of the mark on promotional items (t-shirts, buttons, magnets), on sell sheets, banners, and sales folders; and advertisements on billboards. Mr. Nelson also asserted that applicant has "teamed up with a number of entertainment venues or tourist attractions" to sell its water as the "official water" of such venues (e.g., Pier 39, a tourist attraction in San Francisco, California, and Universal Studios in Hollywood, California). Applicant submitted examples of its packaging and advertising, and photographs of the billboards and delivery trucks.

After a careful review of the record, we find that applicant has not shown that the phrase "Alpine Spring Water" has acquired distinctiveness. We are not persuaded by applicant's argument that because its mark CRYSTAL GEYSER appears in close proximity to "Alpine Spring Water" in its advertisements and promotions, the phrase "alpine spring water" has been endowed with source-identifying significance. In fact, it has the effect of informing the consumer of the nature of the product, i.e., that it is alpine spring water. Based on applicant's own advertising, it is clear that at least some, if not all, of applicant's bottled water originates from alpine springs.[3] Thus, despite the broad advertising campaign for CRYSTAL GEYSER ALPINE SPRING WATER and the impressive sales figures, we do not find that ALPINE SPRING WATER has come to signify the commercial source of the product, but rather continues merely to inform the consumers about the nature of the product, particularly in an industry where consumers are accustomed to seeing the brand name and the designation of the type of bottled water in close proximity to each other, as the examples set forth above illustrate. Similarly,

---

[3] While one excerpt refers to the mountains of Tennessee as a source of applicant's water, most refer to higher, alpine peaks outside Tennessee.

although ALPINE SPRING WATER appears in the labels in the same color as CRYSTAL GEYSER and is set apart from the other descriptive matter, specifically, the terms "Natural" and "Sodium-free" displayed in a different color, we do not find this sufficient to render applicant's display of its mark as significant evidence of distinctiveness, given the highly descriptive nature of the phrase.[4]  While applicant relies on In re America Online Inc., 77 USPQ2d 1618, 1619-1621 (TTAB 2006) in support of its position, we caution that each case must be determined on its own facts and evidentiary record.  We note that the circumstances present in America Online were quite different and involved a different industry.  For example, in that case, the record showed that applicant had 80 million users that send approximately one billion messages *each day* using the applicant's services, and the record included evidence of many corporations licensed to use the involved mark and affidavits from customers attesting to the mark's source-identifying significance.  America Online, at 1625.

In view of the highly descriptive nature of the phrase ALPINE SPRING WATER, applicant's evidence of acquired

---

[4] We further note that use of the TM designation does not in itself elevate descriptive matter to a trademark.  In re Remington Products Inc., 3 USPQ2d 1714 (TTAB 1987).

distinctiveness is insufficient to show that the phrase acquired distinctiveness.

**Decision**: The requirement for a disclaimer under Trademark Act Section 6(a), and the refusal of registration in the absence of a disclaimer, is affirmed. The phrase ALPINE SPRING WATER is merely descriptive and applicant has not established, under Section 2(f), that it has acquired distinctiveness. However, if applicant submits the required disclaimer of ALPINE SPRING WATER to the Board within thirty days, this decision will be set aside as to the affirmance of the disclaimer requirement, and the application then shall proceed to publication.[5] See Trademark Rule 2.142(g), 37 C.F.R. §2.142(g).

---

[5] The standardized printing format for the required disclaimer text is as follows: "No exclusive right to use ALPINE SPRING WATER is claimed apart from the mark as shown." TMEP §1213.08(a) (4th ed. April 2005).