THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
November 29, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Greenliant Systems, Ltd.

_____

Serial No. 78724139

_____

Paul A. McLean of DLA Piper LLP (US) for Greenliant
Systems, Ltd.

Kelley L. Wells, Trademark Examining Attorney, Law Office
105 (Thomas G. Howell, Managing Attorney).

_____

Before Bucher, Taylor and Bergsman,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Greenliant Systems, Ltd. ("applicant") seeks to
register the mark NANDRIVE on the Principal Register, in
standard character form, for "electronic integrated
circuits," in Class 9.[1] Applicant claimed first use of its
mark anywhere and first use of the mark in commerce at
least as early as February 27, 2007.

---

[1] Applicant is the successor to Silicon Storage Technology, Inc.,
the original applicant. The assignment of the mark and use-based
application was recorded in the U.S. Patent and Trademark Office
on June 2, 2010, at reel 4216, frame 0821.

Serial No. 78724139

Applicant's specimen of use comprising a photograph of the mark applied to the goods is displayed below.



The Trademark Examining Attorney refused to register applicant's mark under Section 2(e)(1) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive. According to the Examining Attorney, "applicant's electronic integrated circuits are memory storage devices which utilize NAND flash memory technology or are flash memory drives. The applicant's goods are NAND drives."[2]

While maintaining the position that its mark is not merely descriptive, applicant requested that NANDRIVE be allowed to register on the Principal Register under Section 2(f) or, in the alternative, on the Supplemental Register. The Examining Attorney continued the refusal under Section 2(e)(1), denied registration under Section 2(f), and issued a refusal under Section 23(c) on the ground that

---

[2] The Examining Attorney's Brief, unnumbered p. 4.

Serial No. 78724139

applicant's mark is generic and, therefore, not registrable on the Supplemental Register.[3]

Applicant attached evidence to its brief. To the extent that it is the same as evidence previously submitted, it is already of record as part of the application file, and its submission was unnecessary. *See ITC Entertainment Group Ltd. v. Nintendo of America, Inc.,* 45 USPQ2d 2021, 2022-2023 (TTAB 1998) (submission of duplicative papers is a waste of time and resources, and it is a burden upon the Board). To the extent attached evidence had not previously been submitted it is untimely and has not been considered.

Evidence

The Examining Attorney submitted the following evidence to demonstrate that NANDRIVE is generic when used in connection with "electronic integrated circuits":

1. The definition of NAND from *Wĕbopēdia* (webopedia.com):

> NAND Flash architecture is one of two
> flash technologies (the other being
> NOR) used in memory cards such as the
> CompactFlash cards. It is also used in

---

[3] Applicant complained that the refusals to register were issued after applicant filed a Statement of Use. On appeal, the Board will review only the correctness of the underlying substantive refusals. We will not consider any arguments regarding whether the refusals are procedurally deficient based on their timing. *In re Jump Designs LLC.,* 80 USPQ2d 1370, 1373 (TTAB 2006); see also TMEP § 1109.08 (7th ed. 2010).

> USB Flash drives, MP3 players, and provides the image storage for digital cameras. NAND is best suited to flash devices requiring high capacity data storage. NAND flash devices offer storage space up to 512-MB and offers faster erase, write, and read capabilities or NOR Architecture.
>
> NAND flash architecture was introduced by Toshiba in 1989.

*See also* the entry from *IC Knowledge LLC* (icknowledge.com) defining NAND as "a type of flash memory."

2.    The definition of "drive" from *Bartleby.com* derived from <u>The American Heritage Dictionary of the English Language</u> (4th ed. 2000) providing that in the field of computer science, the word "drive" means "a device that reads data from and often writes data onto a storage medium, such as a floppy disk."

3.    The definition of "integrated circuit" from *Wĕbopēdia*:  "Another name for a chip, an integrated circuit (IC) is a small electronic device made of a semiconductor material."[4]

4.    An except from the website of applicant's predecessor, recreated below, describing its "NANDrive integrated circuit" as a solid state drive.

---

[4] *See also TechTerms.com* ("an integrated circuit, or IC, is a small chip that can function as an amplifier, oscillator, timer, microprocessor, or even computer memory").

NANDrive<sup>TM</sup>

NANDrive<sup>TM</sup> – 85 Series

The NANDrive integrated circuit (IC) is a high performance, fully integrated, embedded flash Solid State Drive.  It contains an integrated ATA Controller and NAND Flash drive die in a multiple package.  This product is well suited for embedded solid state mass storage applications offering new and expanded functionality while enabling cost effective design.

The NANDrive is a single device, solid state drive that is designed for embedded systems using standard ATA/IDE protocol. It has built in microcontroller and file management firmware that communicates with ATA standard interfaces; therefore, the device does not require additional proprietary software such as Flash File System (FFS) and Memory Technology Driver (MTD) software.

A "solid state" device is defined as follows:

An electronic component or circuit made of solid materials, such as transistors, chips and bubble memory. There is no mechanical action in solid state devices, although an unbelievable amount of electromagnetic action takes place within.

For data storage, solid state devices are much faster and more reliable than mechanical disks and tapes, but are more expensive.[5]

---

[5] The Computer Glossary, p. 367 (7th ed. 1995).  The Board may take judicial notice of dictionary evidence. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

A "solid state disk" is "a disk drive made of memory chips used for high-speed data access. … *See flash disk.*"[6]

A "flash disk" is "a solid state disk made of flash memory.  It emulates a standard disk drive in contrast with flash memory cards, which require proprietary software to make them function."[7]

"Flash memory" is "a memory chip that holds its content without power."[8]

5.    An excerpt from *WiseGeek* (wisegeek.com) entitled "What are NAND Hard Drives?"  According to the author, "NAND (Not And) hard drives are very fast, high-capacity solid-state flash memory drives."

6.    Stories/news articles referencing NAND drives as solid state flash memory drives.

a.    *The Tech-FAQ* (tech-faq.com) describing NAND drives as "high-capacity, high-speed, solid-state flash memory drives."  According to the author, the term "NAND" refers to the architecture of the chip;

b.    *ComputerWorld* (computerworld.com) has the following quotation:  "NAND … is a type of solid-state, flash memory technology";

---

[6] *Id.*

[7] *Id.* at 151.

[8] *Id.*

Serial No. 78724139

        c.    Two articles from *EE TIMES ONLINE*
(eetimes.com) have the following quotations:  "NAND flash
devices are solid-state memories with no moving parts,
relying instead on storing small amounts of electric charge
in semiconductor transistor structures" and "NAND-based-
solid-state drives";

        d.    "Outlook:  Seven New Developments That Will
Define 2007," *Backbone* (backbonemag.com) has the following
quotation:  "NAND drives will replace hard drives";

        e.    *PCWorld* (pcworld.com) has the following
quotation:  "flash hard drives are also known as 'NAND
drives'";

        f.    *Daily Tech* (dailytech.com) and *Slippery
Brick* (slipperybrick.com) discuss INTEL NAND drives;

        g.    *engadget* (engadget.com) reviews the new
Samsung laptop computer featuring a NAND drive;

        h.    *GIZMODO* (gizmodo.com) announcing the
introduction of a NAND drive by SanDisk;

        i.    "NAND drive rides PCIe" regarding solid-
state drives," *Interconnects* (interconnects.blogspot.com);

        j.    *KickStartNews* (kickstartnews.com) reviewing
NAND drives;

        k.    "Toshiba Begins Mass Production of MCL NAND
Solid State Drives: 128 GB MCL NAND Drive is the Largest

7

Serial No. 78724139

Capacity SSD to be Featured In a Notebook PC,"

*Semiconductor International* (semiconductor.net); and

l. "Startup Unveils NAND-based Storage Drive,"

*HPC Wire* (hpcwire.com).

<u>Whether NANDRIVE is generic?</u>

When a proposed mark is refused registration as being a generic term, the examining attorney has the burden of proving genericness by "clear evidence" thereof. *See In re Hotels.com*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); and *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987).

The critical issue is to determine whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to refer to the category or class of goods in question. *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986); *In re Women's Publishing Co. Inc.*, 23 USPQ2d 1876, 1877 (TTAB 1992). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to

8

that genus of goods or services?" *Ginn,* 228 USPQ at 530.

Evidence of the public's understanding of a term may be

obtained from any competent source, including testimony,

surveys, dictionaries, trade journals, newspapers and other

publications. *See In re Northland Aluminum Products, Inc.*,

777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985); *Merrill*

*Lynch,* 4 USPQ2d at 1143.

Finally, where, as here, the mark is a compound term,

the examining attorney may establish that the term is

generic by producing evidence that each of the constituent

words is generic, and that the separate words retain their

generic significance when joined to form a compound that

has "a meaning identical to the meaning common usage would

ascribe to those words as a compound." *In re Gould Paper*

*Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111-1112 (Fed. Cir.

1987) (SCREENWIPE held generic as applied to premoistened

antistatic cloths for cleaning computer and television

screens); *see also* TMEP §1209.01(c) (i).

We begin by finding that the genus of goods at issue

in this case is adequately defined by applicant's

identification of goods, namely, "electronic integrated

circuits." *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19

USPQ2d 1551, 1552 (Fed. Cir. 1991) ("[A] proper genericness

inquiry focuses on the description of [goods or] services

set forth in the [application or] certificate of registration"). As displayed above, the excerpt from the website of applicant's predecessor submitted by the examining attorney illustrates that the goods in this genus (*i.e.,* electronic integrated circuits) include high-speed, solid state flash memory drives.

> The NANDrive integrated circuit (IC) is a high performance, fully integrated, embedded Sold State Drive. … The NANDrive is a single device, solid state drive for embedded systems using standard ATA/IDE protocol. It has built in microcontroller and management firmware that communicates with ATA standard interfaces …

A "microcontroller" is "a control unit on a single chip."[9] A "controller" is "an electronic circuit board or system that controls a peripheral device."[10] The website identifies applicant's NANDRIVE as an electronic integrated circuit.

To support its position that NANDRIVE is not a generic term, applicant submitted 132 references to NANDRIVE from the LexisNexis database, all of which reference applicant. However, many of those articles

---

[9] The Computer Glossary, pp. at 241 and 248.
[10] *Id.* at 78.

refer to the NANDRIVE "as an integrated multi-chip package" and "solid state drive."[11]

That electronic integrated circuits include NAND flash memory is further supported by the definitions of the terms used to describe NAND drive devices.

> "Flash memory" is "a memory chip that holds its content without power."[12]

> "Flash disk" is defined as "a solid state disk made of flash memory. It emulates a standard disk drive in contrast with flash memory cards, which require proprietary software to make them function."[13]

> "Solid state" means "an electronic component or circuit made of solid materials, such as transistors, chips and bubble memory."[14]

Because Section 7(b) of the Lanham Act bestows upon the owner of a registration the presumption of use of a mark for all goods identified in a registration, the question of registrability must be determined by considering any goods falling within the literal scope of an identification, and not merely the particular goods an applicant may be marketing at the time when registrability is determined. *In re Reed Elsevier Properties, Inc.,*

---

[11] Declaration of Paul A. McLean. Applicant also submitted a list of Internet search results for the term NANDRIVE. Although the information in the list was truncated, applicant's NANDRIVE was identified as an integrated circuit and/or a solid state device.

[12] The Computer Glossary, at 151.

[13] *Id.*

[14] *Id.* at 367.

77 USPQ2d 1649, 1654 (TTAB 2005).  Accordingly, we find that "electronic integrated circuits" encompass solid state flash memory drives and, as such, the category of goods at issue includes solid state flash memory drives.  In other words, while the broad category of goods in the present case may be electronic integrated circuits, there is a narrower category of solid state flash drives within that broad category.  *See In re Wm. B. Coleman Co.,* 93 USPQ2d 2019 (TTAB 2010) (lighting fixtures is a generic term for electric candles); *In re Reed Elsevier Properties, Inc.,* 77 USPQ2d at 1656 ("the genus of services is providing a web site with a database of information covering the identified topics of law, legal news and legal services and that includes information about lawyers and information from lawyers"); *In re CyberFinancial.Net Inc.,* 65 USPQ2d 1789 (TTAB 2002) (BONDS.COM is generic for "providing information regarding financial products and services via a global computer network and providing electronic commerce services via a global computer network … with respect to taxable and tax exempt debt instruments" because the services encompass information about bonds); *In re Web Communications*, 49 USPQ2d 1478, 1479 (TTAB 1998) (consulting services include assisting customers in communications through the Internet); *In re Analog Devices,*

12

*Inc*., 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd*, 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989) (unpublished) (registration is properly refused if the subject matter for registration is generic of any one of the goods for which registration is sought); *Cf. In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005), *quoting, Application of Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46, 48 (CCPA 1975) ("Our predecessor court...has stated that registration should be refused if the mark is descriptive of any of the goods for which registration is sought").

We now turn to the second inquiry:  the public's understanding of the term.  As noted above, the evidentiary burden of establishing that a term is generic rests with the USPTO and the showing must be based on clear evidence. *Merrill Lynch*, 4 USPQ2d at 1143.  Based on the record described above, we find that there is clear evidence to support a finding that the relevant public, when it considers NANDRIVE in conjunction with electronic integrated circuits, readily understands that term as identifying a type of electronic integrated circuit, namely, a solid-state flash drive.  The news stories and articles submitted by the Examining Attorney expressly identify NAND drive devices as solid state flash memory

drives.  These examples of competitors and commentators using the term NAND drive as a category or type of product is persuasive evidence that the relevant consumers perceive the term as generic.  *Continental Airlines Inc. v. United Airlines Inc.*, 53 USPQ2d 1385, 1395 (TTAB 1999).

To counter the evidence submitted by the Examining Attorney, applicant submitted the Declaration of Paul McLean, an attorney representing applicant, attesting to the facts that (1) 48 of 52 hits from an Internet search for the term NANDRIVE referenced applicant and (2) that 132 of 132 references in a Lexis/Nexis search referenced applicant.  Applicant contends that this "is strong evidence that the public regards the term NANDRIVE as a trademark for Applicant's goods."[15]  We are not persuaded because applicant's argument is based on the false premise that NANDRIVE and NAND drive engender different commercial impressions.

The evidence shows common use of the term NAND drive in the industry.  Applicant's mark NANDRIVE is simply a compressed version of the generic terms NAND and drive.  When the terms NAND and drive are combined into the compressed term NANDRIVE, the mark is equivalent in sound

---

[15] Applicant's Brief, p. 16.

and meaning to the individual terms. The individual words NAND and drive retain their generic meanings because the compression of the two terms is not incongruous and does not evoke a unique commercial impression.

We also note that there is no evidence that NANDRIVE has another meaning or would be perceived as anything other than a reference to a NAND drive.

It is clear from the evidence that the term NANDRIVE would be recognized as the combination of the words NAND and drive and that this would be readily apparent to any purchaser or prospective purchaser of applicant's goods. Therefore, the combination, or "telescoping," of the terms is immaterial to the issue before us and applicant's slightly misspelled version of the generic term NAND drive does not compel a different result. *In re 3Com Corp.,* 56 USPQ2d 1060, (TTAB 2000) (the deletion of a space between the terms ATM and LINK does not transform the otherwise generic term into a trademark or change the commonly understood meaning of the term); *Micro Motion Inc. v. Danfoss A/S,* 49 USPQ2d 1628, 1631 (TTAB 1998) (the fact that MASSFLO is a telescoped, slightly misspelled version of "mass flow" does not transform a generic term into a trademark); *In re Stanbel, Inc*. 16 USPQ2d 1469 (TTAB 1990), *aff'd without pub. op.,* 925 F.2d 1480, 20 USPQ2d 1319

15

(Fed.Cir. 1991) (where the record established that the term "ice pack" was a generic designation for a "nontoxic reusable ice substitute for use in food and beverage coolers," applicant's asserted mark ICE PAK was held generic and, therefore, unregistrable).

Moreover, the fact that an applicant may be the first or only user of a generic designation or, as in this case, a compressed version of such a term, does not justify registration if the only significance conveyed by the term is that of the category of goods. *See In re Stanbel Inc.*, 16 USPQ2d at 1472; *In re Hubbard Milling Co.*, 6 USPQ2d 1239 (TTAB 1987)(MINERAL-LYX held generic for mineral licks for feeding livestock); *In re National Shooting Sports Foundation, Inc.,* 219 USPQ 1018, 1020 (TTAB 1983) (SHOOTING, HUNTING, OUTDOOR TRADE SHOW AND CONFERENCE held apt descriptive name for conducting and arranging trade shows in the hunting, shooting, and outdoor sports products field).

Applicant contends that "48 of 52 hits on an internet search of the term NANDRIVE (representing 92.3% of the hits) were references to Applicant, and that 132 of 132 references found in a LexisNexis search of the term NANDRIVE were to applicant (which represents 100% of the references found) … [and] is strong evidence that the

Serial No. 78724139

public regards the term NANDRIVE as a trademark for Applicant's goods."[16]  We disagree.  First, as indicated above, because applicant may be the only user of the compound term NANDRIVE, its internet and Lexis/Nexis hits are going to be heavily skewed to articles referencing applicant.  Second, it is not clear to us how consumers will perceive the term NANDRIVE as used in the articles. The potential ambiguity is illustrated by March 8, 2009 article in *Lab Business Week.*

> SILICON STORAGE TECHNOLOGY, Inc.; SST NANDrive and SQI Flash Named Finalists for the 19th Annual EDN Innovation Awards
>
> *      *      *
>
> The SST NANDrive high-performance, fully integrated embedded flash solid-state drive is a finalist in the Memory category, and the company's 26 Series Serial Quad I/O (SQI) family of 4-bit multiplexed I/O serial interface flash memory devices is a finalist in the Logic and Interface IC's category.

Due to the generic character of the term "nand drive," consumers are likely to perceive the telescoped term NANDRIVE or, as used in the above reference, NANDrive, merely as a stylized version of the generic term for purposes of advertising.  There is simply no evidence to support applicant's claim that consumers will perceive

---

[16] Applicant's Brief, p. 16.

17

NANDRIVE or NANDrive as a trademark or anything other than a generic term.

Applicant argues that "NANDRIVE is capable of a double meaning and entendre that would be recognized by the average consumer."[17]  Suffice it to say we find this argument without any support in the record and totally without merit.

In view of the foregoing, we find that the term NANDRIVE is generic when used in connection with "electronic integrated circuits."  Because the term NANDRIVE is generic when used in connection with "electronic integrated circuits," it is not registrable on the Supplemental Register or on the Principal Register under the provisions of Section 2(f).

Mere Descriptiveness

Implicit in our holding that the evidence before us establishes that NANDRIVE is generic for applicant's goods is a holding that NANDRIVE is at least merely descriptive of applicant's goods under Section 2(e)(1).  "The generic name of a thing is in fact the ultimate in descriptiveness."  *H. Marvin Ginn Corp.,* 228 USPQ at 530.

---

[17] Applicant's Brief, pp. 12-14.

Serial No. 78724139

Acquired Distinctiveness

For the sake of completeness, we now turn to the issue of whether applicant's mark has acquired distinctiveness. In finding that the designation NANDRIVE is incapable of being a source identifier for applicant's goods, we have considered all of the evidence touching on the public perception of this designation, including the evidence of acquired distinctiveness. As to acquired distinctiveness, applicant has the burden to establish a prima facie case of acquired distinctiveness. *See Yamaha International Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988).

"Applicant asserts that NANDRIVE has acquired distinctiveness on the basis of [applicant's] sole use of the mark on its goods and that consumers identify Applicant as the sole source of the goods on which the mark is used."[18]  This evidence merely demonstrates that applicant is the only company that misspells the term NAND drive, not that the relevant consumers of such products have come to view the designation NANDRIVE as applicant's source-identifying trademark.  The issue here is the achievement of distinctiveness, and the evidence falls far short of

---

[18] Applicant's Brief, p. 19, referencing the Internet and LexisNexis searches conducted by Paul McLean discussed above.

19

establishing this.  Notably, the record contains little direct or circumstantial evidence that the relevant classes of purchasers of applicant's goods view NANDRIVE as a distinctive source indicator for applicant's goods.  For example, applicant has used the mark for only a relatively short time (*i.e.,* since February 27, 2007) and applicant has not submitted any evidence regarding the extent of its sales, advertising, market share, or renown in the field.

Accordingly, even if the designation NANDRIVE were found to be not generic, but merely descriptive, given the highly descriptive nature of the designation NANDRIVE, we would need to see a great deal more evidence (especially in the form of direct evidence from customers) than what applicant has submitted in order to find that the designation has become distinctive of applicant's goods. That is to say, the greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish acquired distinctiveness.  *See In re Bongrain International Corp.*, 894 F.2d 1316, 1317 n.4, 13 USPQ2d 1727, 1728 n.4 (Fed. Cir. 1990); *Yamaha Int'l. Corp. v. Hoshino Gakki Co.,* 6 USPQ2d at 1005.  The sufficiency of the evidence offered to prove acquired distinctiveness should be evaluated in light of the nature of the designation.  Highly descriptive terms, for example, are less likely to be perceived as

trademarks and more likely to be useful to competing sellers than are less descriptive terms.  More substantial evidence of acquired distinctiveness thus will ordinarily be required to establish that such terms truly function as source-indicators.

*Decision*:  The refusal under Section 23(c) of the Trademark Act of 1946 on the ground that the proposed mark is generic is affirmed; the refusal under Section 2(e)(1) of the Trademark Act on the ground that the mark is merely descriptive and that the Section 2(f) showing is insufficient is likewise affirmed.